IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| JASON KOKINDA, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | 2:16-cv-1580-MRH-CRE |
| PENNSYLVANIA DEPARTMENT OF CORRECTIONS, C.O. PEGRAM, SHELLEY MANKEY, SUSAN COWAN, MR. GEEHRING, JOHN DOE #1, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

**Cynthia Reed Eddy, United States Magistrate Judge.**

### I. RECOMMENDATION

For the reasons explained below, it is respectfully recommended that the Commonwealth Defendants' pending motion to dismiss (ECF No. 14) be granted and that Plaintiff's complaint (ECF No. 7) be dismissed in its entirety, with prejudice.

### II. REPORT

**A. Background**

Plaintiff Jason Kokinda is a former state prisoner and *pro se* litigant.[1] In this case, he complains that when he was held in the mental health block of SCI-Greene, various employees at the prison were deliberately indifferent to his "severe psychological trauma." (Compl. at ¶¶ 15,

---

[1] In addition to the present action, Plaintiff has filed several other civil rights actions in this Court, all of which have been assigned to the undersigned for pretrial proceedings. *See* 2:15-cv-179 (abandoned by Plaintiff); 2:15-cv-1593 (currently stayed and administratively closed while Plaintiff seeks reconsideration from the Court of Appeals); 2:16-cv-5 (pending); 2:16-cv-1303 (pending); 2:16-cv-1457 (pending); 2:17-cv-217 (stayed and administratively closed while Plaintiff seeks reconsideration from the Court of Appeals).

1

23, 25, ECF No. 7).

In particular, Plaintiff claims that "he felt a creepy vibe from" a homosexual male corrections officer, Defendant Officer Pegram. *Id.* at ¶¶ 3-4. In October of 2014, Plaintiff claims that he experienced discomfort "when he was in his cell wearing just boxers, near the door" and Officer Pegram "deliberately looked down at a very sharp angle, focusing and fixated exclusively upon [Plaintiff's] groin area for an uncomfortable duration." *Id.* at ¶ 2. Officer Pegram also allegedly displayed a "latent sexual interest" for Plaintiff on December 5, 2014 by "fixat[ing] upon" Plaintiff when Plaintiff "was relaxing on his bed topless after washing his t-shirt, adjusting his groin area." *Id.* at ¶ 1. Plaintiff avers that he noticed Officer Pegram "eerily drifting past" Plaintiff's cell "and peering in with 'too much' interest." *Id*. As a result, Plaintiff avoided Officer Pegram thereafter. *Id.* at ¶ 3. In addition, various unspecified, non-Defendant female corrections officers at SCI-Greene ignored "the older and less desirable prisoners" but were "fixat[ed] upon [Plaintiff's] groin area," as they "had been staring at him with hard looks, ever since his arrival." *Id.* at ¶ 5. According to Plaintiff, this was a "form of sexual grooming" at SCI-Greene. *Id*.

The complaint asserts that Plaintiff was "severely psychologically traumatized at the mere thought of having his privacy violated for Pegram's sexual gratification." *Id.* at ¶ 6. Plaintiff became "delusional as a coping mechanism" and thought "that C.O. Pegram and other staff were merely trying to ensure that he was 'sexually/psychologically impotent' as a security measure." *Id.*at ¶ 15. Plaintiff also "became extremely paranoid that they were retaliating against him for showing any signs of sexual desire, by coming in his cell and dosing even his commissary with heavy doses [*sic*] of salt peter and/or androgens." *Id.* at ¶ 16. Plaintiff developed, as a result of his obsessive compulsive disorder in the environment and various other

stress-induced symptoms, a "hypothetical theory" that "the real reason that staff [members] were fixated upon him" was because "they were testing his sexual capacity; seeking to neuter him mentally and physically, for not assimilating like the other institutionalized inmates." *Id.* at ¶¶ 16, 18-19. "Thereafter, [Plaintiff] felt severe melancholy any time he even saw C.O. Pegram. And became extremely paranoid and distrustful of staff; and other inmates who denied his hypothetical theory concerning the salt peter/androgen laced food and sexual grooming really being sexual oppression tools." *Id.* at ¶ 20.

Plaintiff filed a grievance against Officer Pegram on December 9, 2014 and also sent a request to the then-Unit Manager, Defendant Shelly Mankey, asking "that he be moved far away from C.O. Pegram." *Id.* at ¶ 9. Mankey, however, did not respond to the request. *Id.* Defendant Susan Cowan then replaced Mankey as Unit Manager. Plaintiff claims that he sent a request slip to Cowan on January 17, 2015, notifying her that he "needed to be transferred to another block; citing the psychological trauma that C.O. Pegram was causing him." *Id.* at ¶ 10. But Plaintiff was not transferred to another block until February of 2015 based on an unrelated "retaliation" that is the subject of a different civil action Plaintiff is pursuing in this Court. *Id.* at ¶ 35; 2:17-cv-217.

Plaintiff also "wrote to the Prison Rape Elimination Act ["PREA"] board, seeking an investigation and relief from the conditions of his cruel and unusual punishment; but, later found out they never received his letter." (Compl. at ¶ 11). Plaintiff "infers" that Defendant Mr. Geehring "threw it out with malice, as a favor to C.O. Pegram," although he pleads no facts to support this speculation. *Id.* In any event, Plaintiff was able to resend "the entire grievance packet on the issue, with letter," which resulted in an investigation. *Id.* at ¶ 12. During the investigation, Plaintiff "was called down to Strip & Search to discuss the incident with John Doe

#1, Lieutenant; (Haurenbaugh?) whom ultimately did nothing to help [Plaintiff]." *Id*.

Plaintiff claims to have suffered "many" unspecified retaliations from staff members after complaining about Officer Pegram, given that Officer Pegram was vice president of the DOC union, a "status [that] made [Pegram] popular with staff." *Id.* at ¶¶ 13-14. The retaliations involved unspecified staff members putting Plaintiff "under the microscope, nit-picking his every word, trying to find some legitimate covering to harm him at all times."[2] *Id.* at ¶ 13.

The Defendants in this case are the Pennsylvania DOC, Officer Pegram, Mankey, Cowan, Geehring, and John Doe #1/Lieutenant Haurenbaugh. According to Plaintiff, "[a]ll of the Defendants are liable for 'deliberate indifference' to the 'severe psychological trauma' they were causing [Plaintiff]; for not caring how [Plaintiff] was being effected, only at best examining whether other (predominantly homosexual) mentally ill E-Block inmates were reporting the same exact problems with C.O. Pegram." *Id.* at ¶ 25. Plaintiff brings claims under 42 U.S.C. § 1983 for violation of the First, Eighth, and Fourteenth Amendments to the United States Constitution, conspiracy claims under 42 U.S.C. §§ 1985(3) and 1986, and a claim under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132. He requests compensatory damages, jointly and severally, against the DOC and the individual Defendants in the amount of $250,000, and punitive damages against the same Defendants, jointly and severally, in the amount of $750,000.

---

[2] As noted above, one of the "retaliations" that Plaintiff claims he suffered while confined at SCI-Greene is the subject of a different civil action in this Court. 2:17-cv-217. There, Plaintiff claims he suffered retaliation in the form of being denied food in the restrictive housing unit for ten days in February of 2015 after submitting a grievance and circulating affidavits regarding misappropriation of federal funds designated for mentally ill prisoners. *See, e.g.,* 2:17-cv-217 (R&R at 8-9, ECF No. 10). Here, he alludes to those same allegations but notes that it would be the subject of a different lawsuit. *See* (Compl. at ¶ 35). Accordingly, these allegations relating to retaliation beginning in February of 2015 are outside the scope of this action and will not be addressed herein.

All of the Defendants are represented by the same counsel and they responded to the complaint by filing a Rule 12(b)(6) motion to dismiss. (ECF No. 14). They seek dismissal of the entire complaint. The motion has been fully briefed by the parties (ECF Nos. 15, 17) and is ripe for recommendation.

**B. Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, the well-pleaded factual content in the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and also "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks and citations omitted). When analyzing a motion to dismiss, it is appropriate to separate the factual allegations from allegations that merely recite the legal elements of the claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The well-pleaded facts are accepted as true, but legal conclusions may be disregarded. *Id.* at 210-11. Next, a determination is made as to "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211. This "plausibility" determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Moreover, because Plaintiff is proceeding *pro se*, the Court will accord him an even more liberal reading of the complaint, employing less stringent standards than when judging the work product of an attorney. *Haines v. Kerner*, 404 U.S. 519 (1972).

**C. Discussion**

At the outset, and as the Court has already noted in many of Plaintiff's other civil actions in this judicial district, the following claims should be summarily dismissed: (1) the §§ 1983, 1985(3), and 1986 claims against the DOC and the individual Defendants sued in their official capacities because they are immune from these claims pursuant to the Eleventh Amendment; (2) the § 1985(3) conspiracy claim against the individual Defendants in their individual capacities because Plaintiff "does not . . . belong[] to a class within the meaning of § 1985(3)," given that "[h]is contention that 'mentally ill prisoners,' 'litigious prisoners,' prisoners 'exercising constitutional rights,' or 'handicapped persons' are suspect classes is simply without merit"; (3) the § 1986 conspiracy claim because the underlying § 1985(3) conspiracy claim on which it depends is not viable; and (4) the claim under Title II of the ADA, 42 U.S.C. § 12132, against the individual Defendants in their individual capacities because only the DOC is the proper Defendant. *See* 2:15-cv-1593 (ECF Nos. 6, 12, 25); 2:16-cv-5 (ECF Nos. 18, 20, 36); 216-cv-1303 (ECF Nos. 5, 7, 50); 2:17-cv-217 (ECF Nos. 10, 14); *see also Kokinda v. Pa. Dep't of Corr.*, 2016 WL 5864890 (3d Cir. 2016). As a result, the only claims in the complaint requiring further discussion are the § 1983 claims against the individual Defendants in their individual capacities and the claim under Title II of the ADA against the DOC. The Court will address Plaintiff's § 1983 claims first.

**1. Personal Involvement under §1983**

Section 1983 is not itself a "source of substantive rights but a vehicle for vindicating claims conferred by the U.S. Constitution or federal statute." *DiBella v. Borough of Beechwood*, 407 F.3d 599, 601 (3d Cir. 2005) (citation omitted). "In order to prevail on a § 1983 claim against multiple defendants, a plaintiff must show that each individual defendant violated his

constitutional rights." *Estate of Smith v. Marasco*, 430 F.3d 140, 151 (3d Cir. 2005). In other words, each defendant "must have personal involvement in the alleged wrongdoing." *Rode v. Dellacriprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). "Personal involvement can be shown through allegations of personal direction or actual knowledge and acquiescence." *Id.*

In order to meet the personal involvement requirement at the pleading stage, the plaintiff must allege that the defendant did something beyond merely failing to properly respond to a grievance, request slip, or other correspondence. *See id.* at 1208; *Mincy v. Chmielwski*, 508 Fed. App'x. 99, 104 (3d Cir. 2014); *Pressley v. Beard,* 266 Fed. App'x 216, 218 (3d Cir. 2008); *Alexander v. Fritch*, 2010 WL 1257709, *16 (W.D. Pa. 2010). The only allegations in the complaint against Unit Managers Mankey and Cowan are that they failed to appropriately respond to his request slips seeking to be transferred to a different block after he submitted a grievance and PREA complaint with respect to Officer Pegram's staring. (Compl. at ¶¶ 9, 10). Such allegations are insufficient to establish personal involvement under § 1983 against Defendants Mankey and Cowan, even at the pleading stage. *See Horan v. Wetzel*, 2014 WL 631520, *8 (M.D. Pa. 2014) (no personal involvement where two supervisory defendants failed to investigate the plaintiff-prisoner's grievance asserting that a guard sexually harassed the plaintiff) (citing *Jones v. Cullinary Manager II,* 30 F.Supp.2d 491, 496-97 (E.D. Pa. 1998)); *see also Chambliss v. Jones*, 2015 WL 328064, *3 (M.D. Pa. 2015). Consequently, Mankey and Cowan should be dismissed from this action.[3]

---

[3] The Court notes that Plaintiff asserts in his brief in opposition that Mankey and Cowan are liable as Unit Managers not only for failing to respond to his request slips, but also because they were "in charge of remedying PREA issues on the mental health block." (ECF No. 17 at 22). Even if the Court were to consider this conclusory assertion as if it had been properly asserted in the complaint, it would nevertheless be insufficient to state a claim, especially given that the complaint actually alleges that an investigation into Plaintiff's PREA complaint was conducted. (Compl. at ¶ 12). Plaintiff cannot hold Mankey and Cowan liable merely because he believes

Further, Defendant Geehring is entitled to be dismissed from this action for lack of personal involvement because the complaint's only allegation against him is based on unwarranted speculation. *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above a speculative level."). Plaintiff suspects that Geehring may have thrown out Plaintiff's original letter to the PREA board simply because Geehring worked in the mailroom and the board never received the letter. (Compl. at ¶ 11). Plaintiff does not support this speculation with any facts but rather "infer[s]" it "from the sum of collateral retaliations" that Plaintiff experienced. *Id*. Simply stated, these allegations fall short of stating that Geehring was plausibly involved in these events. *See Mincy v. Klem*, 2009 WL 331432, *4 (M.D. Pa. 2009) ("Alleging a mere hypothesis that an individual defendant has personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement.").[4] Thus, Geehring should be dismissed from this action.

### 2. Eighth Amendment Claim

The complaint asserts that Officer Pegram violated Plaintiff's Eighth Amendment rights by creepily displaying a "latent sexual interest" for Plaintiff and staring at Plaintiff's groin area on numerous occasions "for an uncomfortable duration" while Plaintiff was in his boxers in his cell, which Plaintiff contends was "absolute torment" and caused him to experience "severe psychological trauma." *See* (Compl. at ¶¶ 1-2, 19, 23). Plaintiff explicates in his brief in opposition that Officer Pegram's conduct was so severe that it made Plaintiff feel as though he was actually "being physically raped." (ECF No. 17 at 2, 5, 14). Even when accepting these

---

that the PREA investigation was inadequate, nor can he hold them liable merely because they held supervisory roles. *Iqbal*, 556 U.S. at 676.

[4] Moreover, even assuming *arguendo* that Geehring did throw out this letter, the fact remains that Plaintiff suffered no harm or prejudice because he was able to resend the letter and an investigation occurred. (Compl. at ¶ 12).

assertions as true and drawing all reasonable inferences in Plaintiff's favor, the complaint does not state an Eighth Amendment claim.

Initially, the Court rejects Plaintiff's contention that this case presents "extraordinary novel factual scenarios" that cannot be analyzed under the ordinary framework for Eighth Amendment sexual harassment/abuse claims. *Id.* at 1, 2. To the contrary, there is no basis to apply a different standard for the non-physical type of conduct that Plaintiff complains of here.

"To succeed on an Eighth Amendment claim under this standard, the plaintiff must demonstrate (1) that the conditions were objectively sufficiently serious or caused an objectively serious injury to the plaintiff, and (2) that the defendants were deliberately indifferent, or acted with reckless disregard, to inmate constitutional rights, health, or safety." *Berryhill v. Schriro*, 137 F.3d 1073, 1076 (8th Cir. 1998). As our Court of Appeals has explained: "While it is possible for sexual abuse of a prisoner to violate the Eighth Amendment, a small number of incidents in which a prisoner is verbally harassed, touched, and pressed against without consent do not amount to such a violation." *Obiegbu v. Werlinger*, 581 Fed. App'x 119, 121 (3d Cir. 2014) (internal citation omitted) (citing *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997)). Here, Plaintiff does not even allege that Officer Pegram verbally harassed, touched, or pressed against him. Rather, Plaintiff asserts that Officer Pegram (a guard with alleged "latent homosexual tendencies") stared at Plaintiff's groin area in a creepy manner on multiple occasions. *Cf. Grummett v. Rushen*, 779 F.2d 491, 494 n. 1 (9th Cir.1985) (no Eighth Amendment violation where the female guards at the prison conducted pat-down searches of the male inmates' groin areas and were allowed to observe male inmates disrobe, shower, use the toilet, and be strip-searched).

In light of the complaint's allegations that Plaintiff's injury is in the form of severe

9

psychological trauma, the Court acknowledges that multiple Courts of Appeals have concluded that "the alleged pain sufficient to constitute cruel and unusual punishment may be physical *or psychological*." *See Beal v. Foster*, 803 F.3d 356, 357-58 (7th Cir. 2015) (internal alternation omitted; emphasis in original); *Joran v. Gardner*, 986 F.2d 1521, 1525-26 (9th Cir. 1993). Unlike here, however, the psychological trauma in those cases stemmed from either actual physical, sexually-intrusive contact or an imminent threat that the same would occur.

In *Beal*, a sergeant, on numerous occasions, "urinated in view of the plaintiff (by leaving the bathroom door open) and of other inmates, looking at them 'while smiling'"; he also called the plaintiff "derisive terms for homosexuals" like "punk, fag, sissy, and queer," and told the plaintiff "to place his penis inside" another inmate. 803 F.3d at 358. The Court of Appeals for the Seventh Circuit explained that although "most verbal harassment by jail or prison guards does not rise to the level of cruel and unusual punishment," the facts in *Beal* could plausibly rise to the level of an Eighth Amendment violation. The Court explained that the sergeant, by labeling the plaintiff a homosexual in front of other inmates, "increased the likelihood of sexual assaults on him by other inmates." *Id.*

In *Jordan*, there was a prison policy requiring male prison guards to conduct random, nonemergency, suspicionless clothed body searches on female prisoners, notwithstanding that many of the female prisoners had histories involving sexual or physical abuse by men. 986 F.2d at 1525-26. Under the prison policy, the male guards were to "push inward and upward when searching the crotch and upper thighs of the inmate," to "squeeze and knead" "the leg and crotch area," and to "search the breast area in a sweeping motion, so that the breasts will be 'flattened.'" *Id.* at 1523. The Court of Appeals for the Ninth Circuit held that the "high probability . . . of severe psychological injury and emotional pain and suffering . . . from these searches" could

10

constitute a sufficiently serious deprivation under the Eighth Amendment. *Id.* at 1525-26.

Thereafter, however, the Court of Appeals for the Ninth Circuit has on multiple occasions limited *Jordan's* holding to its facts, explaining that *Jordan* was based on (1) "the preexisting mental conditions of the female inmates, which were exacerbated by the searches," *and* (2) "the intrusive and physical nature of the pat down searches that involved 'kneading' the breasts and groin area of the female inmates." *Somers v. Thurman*, 109 F.3d 614, 624 (9th Cir. 1997); *Watison v. Carter*, 668 F.3d 1108, 1113 (9th Cir. 2012). As such, in *Somers*, the Court distinguished *Jordan* and concluded the Eighth Amendment was not violated when a male prisoner complained that female guards performed visual body cavity searches on male inmates and watched male inmates shower, while sometimes pointing, joking, and gawking at the inmates. 109 F.3d at 616. In addition, in *Watison*, the Court found no Eighth Amendment violation where the corrections officer entered the prisoner's cell, rubbed his thigh against the prisoner's thigh while the prisoner was on the toilet, began smiling at the prisoner in a sexual way, and left the cell laughing. 668 F.3d at 1112. In concluding that dismissal of this claim was appropriate, the Court reasoned that the "humiliation" the prisoner "allegedly suffered from the incident . . . does not [objectively] rise to the level of severe psychological pain required to state an Eighth Amendment claim." *Id.* at 1113.

After reviewing these non-binding but well-reasoned appellate decisions, it is clear that Plaintiff's complaint, despite repeatedly asserting that Plaintiff suffered "severe psychological trauma," falls short of stating an Eighth Amendment claim against Officer Pegram. Even when accepting the complaint's allegations as true, Officer Pegram's non-verbal, non-physical conduct of staring at Plaintiff's groin area on multiple occasions did not "increase[] the likelihood of sexual assaults on [Plaintiff] by other inmates." *See Beal*, 803 F.3d at 358. Nor is Officer

Pegram's staring in this case analogous to "the intrusive and physical nature of the pat down searches that involved 'kneading' the breasts and groin area of the female inmates" that were at issue in *Jordan*. *See Somers*, 109 F.3d at 624. Indeed, the conduct complained of by Plaintiff here is, objectively, less severe than the conduct that did not violate the Eighth Amendment in *Somers* and *Watison*.

Likewise, in many other cases, courts have concluded that more direct and sexually explicit conduct than what is alleged here did not violate the Eighth Amendment. *See, e.g., McCormick v. Kline*, 670 Fed. App'x 764 (3d Cir. 2016) (Mem) (the officer allegedly stood outside the inmate's cell while licking his lips in a sexually suggestive manner and referred to a previous alleged assault committed against the inmate by a doctor); *Chambliss v. Jones*, 2015 WL 328064, *1 (M.D. Pa. 2015) (the officer allegedly "came to the Plaintiff's cell-door while Plaintiff was standing at the door, and called the Plaintiff a 'sexy black motherfucker', then he stuck his tongue out and licked two of his fingers and wiped those same fingers down the glass on the Plaintiff's cell-door window"); *Jones v. Culinary Manager II*, 30 F. Supp.2d 491, 497 (E.D. Pa. 1998) (officer grinded on prisoner's buttocks with his penis while threatening to have sex with the prisoner); *Berryhill*, 137 F.3d at 1076 (one officer grabbed the plaintiff by the shoulder while two others separately grabbed the plaintiff's buttocks); *Boddie*, 105 F.3d at 859-61 (female corrections officer squeezed the prisoner's hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pushed her vagina against his penis).

Therefore, the Court concludes that the complaint fails to state an Eighth Amendment claim against Officer Pegram. Even if Officer Pegram's conduct of staring at Plaintiff's groin area on multiple occasions caused Plaintiff to subjectively experience severe psychological

trauma, this non-physical, non-verbal conduct does not, as an objective matter, amount to an Eighth Amendment violation. *Cf. Somers*, 109 F.3d at 624 ("To hold that gawking, pointing, and joking [by female guards during the male inmates' visual searches and showers] violates the prohibition against cruel and unusual punishment would trivialize the objective component of the Eighth Amendment and render it absurd."); *Berryhill*, 668 F.3d at 1076 ("It would be a distortion, however, to characterize the conduct in this case [grabbing the plaintiff's buttocks without any accompanying sexual comments or banter]" as an "objectively serious injury (either physical or psychological).").

In addition, to the extent that Plaintiff claims that John Doe #1/Lieutenant Haurenbaugh is liable under the Eighth Amendment for failing to properly investigate Plaintiff's allegations against Officer Pegram, *see* (Compl. at ¶ 12), such allegations fail to sufficiently establish personal involvement under § 1983. *See Horan, supra* at *8. Further, Plaintiff's vague allegation that Haurenbaugh called Plaintiff "down to Strip & Search to discuss the incident" (Compl. at ¶ 12) does not amount to a constitutional violation. *See Parkell v. Darnberg*, 833 F.3d 313, 336 (3d Cir. 2016) (thrice-daily visual-body cavity searches did not violate the Eighth Amendment in the absence of facts indicating that they were undertaken maliciously or for the purpose of sexually abusing the inmate); *Millhouse v. Arbasak*, 373 Fed. App'x 135, 137-38 (3d Cir. 2010) (visual body cavity searches, even if embarrassing or humiliating, do not violate the constitution). Accordingly, given that there are no other allegations in the complaint against John Doe #1/Lieutenant Haurenbaugh that could implicate any of Plaintiff's other § 1983 claims, he should be dismissed from this action.

### 3. First Amendment Retaliation Claim

The complaint fails to state a claim against Officer Pegram for First Amendment

13

retaliation, which consists of the following three elements: (1) the plaintiff engaged in constitutionally protected conduct; (2) the plaintiff suffered an adverse action at the hands of prison officials; and (3) the plaintiff's constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him. *Rauser v. Horn*, 241 F.3d 330, 333-34 (3d Cir. 2001). Given that Plaintiff alleges he was retaliated against for filing a grievance and PREA complaint against Officer Pegram, he has satisfied the first element: that he engaged in protected conduct. *See Watson v. Rozum*, 834 F.3d 417, 424 (3d Cir. 2016). The complaint does not, however, allege facts relating to the second element: that Plaintiff suffered an adverse action at the hands of prison officials.

An adverse action is one that is "sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (internal quotation marks omitted). To be actionable, the adverse action "need not be great" but "must be more than *de minimis*." *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006). Here, the complaint merely asserts that unspecified staff members put Plaintiff "under the microscope, nit-picking his every word, trying to find some legitimate covering to harm him at all times." (Compl. at ¶ 13). Such alleged conduct, however, is not more than *de minimis* and would not deter a person of ordinary firmness from exercising his constitutional rights. Further, Plaintiff's allegations relating to his made-up, "hypothetical theory" that staff members snuck into his cell to lace his food with salt peter and/or androgens does not constitute an adverse action. *See* (Compl. at ¶¶ 15-16). Because this is only a "hypothetical theory," there are no facts to support such conclusory speculation. Moreover, a person of ordinary firmness would neither concoct such a hypothetical theory nor be deterred from exercising his constitutional rights under these circumstances. This claim should, therefore, be dismissed.

### 4. Fourteenth Amendment Equal Protection Claim

The Court agrees with Defendants that it is unclear what the basis for Plaintiff's Fourteenth Amendment equal protection claim is. The Equal Protection Clause of the Fourteenth Amendment requires that all people similarly situated be treated alike. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Where the plaintiff is a member of a class that is not "suspect or quasi-suspect," or where the plaintiff is not a member of a class and is proceeding as a "class of one," courts look to whether there was a rational basis for the difference in treatment of similarly situated individuals. *Tillman v. Lebanon Cty. Corr. Fac.*, 221 F.3d 410, 423 (3d Cir. 2000); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (the elements of a claim under a "class of one" theory are: (1) the defendant treated the plaintiff differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for difference in treatment). As noted above, Plaintiff does not belong to a suspect or quasi-suspect class, notwithstanding his adamant contention to the contrary.

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Olech*, 528 U.S. at 564 (internal alterations, marks, and citations omitted). But "[w]here there is no discrimination, there is no equal protection violation." *Tillman*, 221 F.3d at 424. The Court notes that the complaint does not contain any factual allegations that Officer Pegram intentionally discriminated against Plaintiff. Indeed, the only allegations against Officer Pegram in the complaint are that he stared at Plaintiff in a creepy manner on numerous occasions. Such allegations do not even suggest that Officer Pegram "treated" Plaintiff any way

at all, let alone differently than others similarly situated. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (general accusations and conclusory assertions that an equal protection violation occurred, absent specific allegations of differential treatment, are insufficient to state a claim). Moreover, the other generalized allegations in the complaint relating to the mistreatment of mentally ill prisoners at SCI-Greene do not involve Officer Pegram. *See* (Compl. at ¶¶ 27, 29-32). Therefore, this claim should be dismissed.

### 5. Title II of the ADA Claim

Plaintiff's claim under Title II of the ADA against the DOC fails as a matter of law. Title II of the ADA provides:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. From this language, the Court of Appeals has explained that to state a claim under Title II, the plaintiff must allege that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *Brown v. Deparlos*, 492 Fed. App'x 211, 215 (3d Cir. 2012).

The complaint contains no facts regarding the second element. Based on Plaintiff's brief in opposition, however, it appears that he is attempting to claim that he was denied "handicap-related medical services" and "accommodation altogether" when the Defendants acknowledged his mental illness but carried out methods intended to exacerbate it. *See* (ECF No. 17 at 9, 14). Even if the Court were to consider these assertions in Plaintiff's brief as if they were properly pleaded in his complaint, dismissal of this claim is still appropriate. Aside from the fact that

16

these assertions are conclusory in nature and lack supporting detail, it is apparent that this sort of alleged conduct from non-medical professionals does not constitute "medical services" for purposes of a Title II claim.

Further, the prison's denial of Plaintiff's request to be transferred to a different block away from Officer Pegram does not suggest that Plaintiff was "excluded from participation in or denied the benefits of [the DOC's] services, programs, or activities." *See Brown,* 492 Fed. App'x at 215. Indeed, as a general matter, "[a]n inmate does not have a right to be placed in the cell of his choice," *Sheehan v. Beyer*, 51 F.3d 1170, 1174 (3d Cir. 1995), and the allegations in the complaint here are markedly different than other disability accommodation cases, such as when a failure to accommodate the prisoner's condition results in the prisoner having "limited . . . access to various programs and services," like the telephone, dining hall, commissary, recreational activities, and religious activities. *See Matthews v. Pa. Dep't of Corr.*, 613 Fed. App'x 163, 166 (3d Cir. 2015). Accordingly, this claim should be dismissed.

### 6. Allowing Amendment would be Futile

In his brief in opposition, Plaintiff alternatively requests leave to amend his complaint if the Court determines that it fails to state a claim. Therefore, "amendment must be permitted in this context unless it would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). Given the nature of Plaintiff's claims in this action, the Court concludes that allowing amendment here would be futile because the complaint, as amended, would not state a claim. *See Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).

The Court notes that in Plaintiff's brief in opposition, he discusses some allegations that he did not plead in the complaint. The Court has already addressed some of these extrinsic facts above, including his conclusory assertions that Defendants Mankey and Cowan were responsible

for remedying PREA violations on the mental health block and that he was denied "handicap-related medical services." In addition, the Court notes that although Plaintiff asserts in his complaint that Defendants Mankey and Cowan ignored his requests to be transferred to a different cell (Compl. at ¶¶ 9-10), he asserts in his brief that Mankey and Cowan actually moved him to a cell "closer to Pegram's desk, and out of sight of cameras, [so] that he may feel more agitation." *See* (ECF No. 17 at 5, 11). Setting aside this contradiction, even if these allegations were included in an amended complaint, Plaintiff's § 1983 claims against Mankey and Cowan would nevertheless be deficient on the merits (rather than for lack for personal involvement as they currently are). As explained above, Plaintiff still could not satisfy the objective component of his Eighth Amendment claim or the adverse action element of his First Amendment retaliation claim, and these allegations do not implicate his equal protection claim.

Moreover, all of the other unadorned, conclusory assertions in Plaintiff's brief, including his contentions that he "was perpetually denied any relief, treatment, or accommodation for his well-documented, severe and debilitating psychological traumas and other medical issues" or that "[t]he staff retaliate against any prisoner making records of medical denials, or staff abuses, or any actionable incidents," *see* (ECF No. 17 at 14, 17), if added to an amended complaint, would not state a claim under the applicable pleading standard set forth in *Twombly/Iqbal*. After all, regardless of how Plaintiff attempts to frame his claims, the bottom line is that the underlying facts in this lawsuit are that a perceived homosexual guard stared at him on a few occasions and that the "retaliations" carried out by staff members involved "nit-picking his every word" and *hypothetically* sneaking into his cell to lace his food with chemicals as a security measure. As a result, allowing Plaintiff to file an amended complaint would be completely futile.

**D. Conclusion**

Based on the above, it is respectfully recommended that the Court grant Defendants' motion to dismiss (ECF No. 14) and dismiss the complaint (ECF No. 7) with prejudice. In accordance with 28 U.S.C. § 636(b)(1)(B), Rule 72(b)(2) of the Federal Rules of Civil Procedure, and Local Civil Rule 72.D.2, any party may file Objections to this Report and Recommendation on or before <u>August 23, 2017</u>. Unless the District Judge orders otherwise, a party may respond to the other party's Objections within fourteen (14) days from the date that the Objections are filed. Failure to timely file objections will constitute a waiver of any appellate rights. *Brightwell*, 637 F.3d at 193 n. 7.

Dated: <u>August 9, 2017.</u>

                                          By the Court:

                                          <u>s/ Cynthia Reed Eddy</u>
                                          Cynthia Reed Eddy
                                          United States Magistrate Judge

cc: all registered users of CM-ECF